ATTORNEY FOR APPELLANT
Shana D. Levinson
Levinson & Levinson
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
Debra Lynch Dubovich
Levy & Dubovich
Merrillville, Indiana

Lynn F. Hammond
Valparaiso, Indiana



FILED
Apr 28 2015, 2:25 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 45S04-1501-DR-23

JAMES BOGNER,

*Appellant (Respondent below),*

v.

TERESA BOGNER,

*Appellee (Petitioner below).*

Appeal from the Lake Superior Court, No. 45D03-0808-DR-796
The Honorable Elizabeth F. Tavitas, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A04-1310-DR-505

**April 28, 2015**

**David, Justice.**

Teresa Bogner (Mother) and James Bogner (Father) were married and have one child, H.B. In 2007, when H.B. was just over two years old, the marriage was dissolved. Father was originally ordered to pay $162 per week in child support. In 2008, Father sought to modify his support obligation. The parties agreed under the Indiana Child Support Guidelines that Father's support obligation would be reduced to $135 per week. In 2013, Father again filed to modify his support

obligation given an increased number of overnights Father was having with H.B. and a decrease in childcare costs. Under the Guidelines, the applicable parenting time credit decreased Father's support obligation to $59 per week. Mother sought a deviation from the amount recommended by the Guidelines. Mother argues that $59 per week is insufficient for her to continue supporting H.B. considering all of the attendant costs she incurs as the custodial parent.

A hearing was held, and the parties agreed to proceed in a summary fashion. After arguments of counsel, the Court entered findings that the support provided under the Guidelines was unreasonable and created a hardship on Mother. As such, the Court deviated upward from the recommended support, but still reduced Father's previous support obligation to $105 per week. Upon Mother's request, the Court also ordered that Mother would claim H.B. each year for the child dependency tax exemption, instead of alternating years with Father. Father appealed the trial court's ordered modification. Father argued that the trial court erred in deviating from the Guidelines regarding the amount of weekly support and in awarding the yearly state and federal tax exemptions to Mother.

Under the Guidelines, after considering certain factors, if "the court finds that the Guideline amount is unjust or inappropriate in a particular case, the court may state a factual basis for the deviation and proceed to enter a support amount that is deemed appropriate." Ind. Child Supp. G. 3(F)(2). The trial court stated on the record its finding that the support provided by the Guidelines was unreasonable, and included the basis for deviating from the Guideline amount.

This Court has continually advised trial courts that the Guidelines should not be treated as immutable, black letter law. Rather, some situations require greater flexibility. To the extent that Father challenges the form of the summary proceedings, that argument is waived because no objection to the nature of the proceedings was made at the time of the hearing. Moreover, the trial court did not clearly err during the summary proceeding when it relied upon the arguments of counsel and limited informal documentary evidence in reaching its findings and conclusions. As such, we affirm the trial court's child support modification order.

**Facts and Procedural History**

Mother and Father were married and have one child together, H.B. H.B. was born on January 16, 2005. On March 19, 2007, the Court granted Mother and Father's dissolution of marriage decree. Father was ordered to pay $162 per week in child support. Mother and Father were also ordered to alternate the years they claimed H.B. for the dependency tax exemption. Just over a year later, Father filed a petition to modify child support due to a substantial and continuing change in circumstances, consistent with the Guidelines. At that time, the parties agreed to modify Father's support obligation to $135 per week. Mother and Father continued to alternate the years that they claimed H.B. for the tax exemption. An automatic review of child support was set in one year to take into consideration that H.B. would be entering Kindergarten for the 2010/2011 school year.

At some point after the 2008/2009 modification, Father and his new wife moved to Valparaiso, Indiana to be closer to H.B.[1] After the move, Father started assisting Mother with H.B. two to three days a week before and after school. Mother and Father worked together to arrange their schedules so one or the other would be free to care for H.B. Given the increased amount of time that Father was spending with H.B., and the decrease in childcare costs since Father's move, Father sought another support modification, which is at issue in the present case. Prior to the modification hearing, Mother and Father stipulated to each other's incomes and number of overnights Father had with H.B. The Child Support Worksheet was entered as a joint demonstrative exhibit at the hearing.

Based on Mother and Father's income and Father's subsequent child credit, under the Guidelines Father would be obligated to pay $151 per week. However, Father could also receive

---

[1] Father also had a subsequent child with his new wife.

a credit for the 140-145 overnights per year that he had with H.B. The parenting time credit amounted to $92 per week, which would reduce Father's total support obligation to $59 per week, if the full parenting time credit was applied. Mother did not stipulate to the recommended amount of support per week, contending that she could not properly support H.B. with such a minimal contribution from Father.

At the modification hearing on September 9, 2013, the Court and both parties agreed to conduct the hearing in summary fashion and no objections were made. Mother sought an upward deviation from the Guidelines, and Father sought for the trial court to modify support in accordance with the Guideline amount. Father argued that he was spending more time with H.B., childcare costs had decreased since H.B. was enrolled in school, he was attending many of H.B.'s extracurricular activities, and he had provided H.B. with all of her own clothing and her own bedroom at his house.

Mother requested an upward deviation from the Guidelines based on the fact that at $59 per week, Father would only be contributing $3,068 per year towards H.B.'s care. Mother also sought a deviation regarding who would claim H.B. for state and federal tax exemption purposes. Mother requested that she get to claim H.B. every year, rather than every other year. Under the Guidelines, Mother's weekly contribution is $120 per week, making her yearly contribution $6,240. Mother asserted that it is unreasonable for Father to pay such a minimal amount when his income is $1,236 per week, her income is $926 per week, and she has H.B. for the majority of overnights. Mother presented that she is also responsible for up to $848 for uninsured medical expenses and for the majority of H.B.'s "controlled expenses," which include expenses for clothing, education, school books and supplies, and personal care. See Ind. Child Supp. G. 6 Cmt. Simply, Mother argued that she needs more to raise H.B., especially if Father continues to claim H.B. every other year for tax purposes. Mother offered two exhibits in support of her arguments, to which Father did not object.

Thus, the issues to be determined by the court included: 1) to what extent should the court deviate from the support amount provided by the Guidelines; and 2) to what extent should the tax

exemption be altered. The trial court determined that the decrease in childcare costs did support a substantial change in circumstances that warranted a support modification. After considering the arguments of both parties, the trial court entered findings on the record. The trial court noted that it is permissible under the Guidelines to deviate from the recommended support amount when the Guideline amount would be "unreasonable, unjust, or inappropriate." (Tr. at 24.) Additionally, parenting time credit is not automatic. Credit may be withheld if that credit would "jeopardize a parent's ability to support the child[]." (Tr. at 24-25.) The trial court determined that under the given circumstances, the Guideline amount was unjust and unreasonable. The trial court explained that it does not seem fair for Father to receive an $80 credit for his subsequent born child and a $92 credit for 140 overnights per year, while Mother has the child 220-230 nights per year, has fixed expenses, controlled expenses, and the first $848 of uninsured healthcare expenses. Under the parties stipulated worksheet, the child is entitled to $272 per week in support. According to the trial court's determination, it is "absurd" that Mother would be responsible for approximately $213 of that amount, in addition to the controlled expenses and uninsured health care. (Tr. at 25, 31.)

The trial court granted Father the parenting time credit for half of the number of overnights he exercised, which amounted to a credit of $46 per week. Thus, Father's weekly support obligation was decreased to $105 per week. The trial court also ordered that Mother be awarded the tax exemption every year, due to the fact that Father has a greater income than Mother. Father was also ordered to pay 56% of H.B.'s extracurricular expenses, which Father claimed he was already paying.

Father appealed the trial court's modification order, arguing that the trial court's findings did not support a deviation from the Guidelines in either the amount of his weekly obligation or in ordering Mother to claim H.B. every year for tax exemption purposes. The Court of Appeals held that the trial court abused its discretion when it determined that the Guidelines created an unjust result and awarded Mother the right to claim the child for a tax exemption each year. Bogner v. Bogner, 16 N.E.3d 1031, 1036-37 (Ind. Ct. App. 2014). The Court of Appeals indicated that the trial court improperly concluded that Father would only be contributing $59 per week, without

considering the excess expenses Father incurs when exercising overnights, and with the overnights, Father would actually be contributing $151.19 per week towards H.B.'s care. Id. at 1036. The Court of Appeals remanded with instructions for the trial court to modify Father's support obligations to $59 per week. Id. Additionally, the Court of Appeals concluded that the trial court did not consider any of the factors that it should have under the Guidelines when determining which parent should be awarded the tax deduction and remanded for the trial court to re-evaluate who should receive the tax exemption based upon the factors listed in the Guidelines. Id. at 1037.

Upon Mother's petition, this Court granted transfer, thereby vacating the Court of Appeals opinion. See Indiana Appellate Rule 58(A).

## Standard of Review

On review, "[a] trial court's calculation of child support is presumptively valid." Young v. Young, 891 N.E.2d 1045, 1047 (Ind. 2008) (citing Kondamuri v. Kondamuri, 852 N.E.2d 939, 949 (Ind. Ct. App. 2006)). "[R]eversal of a trial court's child support order deviating from the appropriate guideline amount is merited only where the trial court's determination "is clearly against the logic and effect of the facts and circumstances before the trial court." Kinsey v. Kinsey, 640 N.E.2d 42, 43 (Ind. 1994) (citing Humphrey v. Woods, 583 N.E.2d 133, 134 (Ind. 1991)). Upon the review of a modification order, "only evidence and reasonable inferences favorable to the judgment are considered." Kinsey, 640 N.E.2d at 44 (string citation omitted). The order will only be set aside if clearly erroneous. Id.[2] Additionally, this Court has found that "[o]pinions

---

[2] This Court has clarified that clear error, and not abuse of discretion, is the proper standard of review for support modifications. McGinley-Ellis v. Ellis, 638 N.E.2d 1249, 1251-1252 (Ind. 1994). Although this Court and the Court of Appeals have phrased the standard as both abuse of discretion and clear error, we seek to clarify once more that clear error should be the standard upon review. See MacLafferty v. MacLafferty, 829 N.E.2d 938, 940 n.3 (Ind. 2005).

from other jurisdiction" can be "helpful and persuasive" when addressing issues that are infrequently before this Court. Miller v. Dilts, 463 N.E.2d 257, 264 (Ind. 1984).

## Discussion

The Indiana Child Support Guidelines serve three objectives: 1) establish an appropriate level of support for children, based on each parent's ability to contribute to that support; 2) increase consistency in support levels for those in similar circumstances; and 3) improve efficiency by encouraging settlements and giving both the court and the parties guidelines for setting awards. Ind. Child Supp. G. 1. To reach these goals, child support is calculated under the Guidelines "as the share of each parent's income estimated to have been spent on the child if the parents and child were living in an intact household." Id. However, the support award under the Guidelines is not binding upon the parties or the court. Rather, "[i]f the court concludes from the evidence in a particular case that the amount of the award reached through application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion." Ind. Child Supp. G. Supp.R.3. However, the findings required "need not be as formal as Findings of Fact and Conclusions of Law; the finding need only articulate the judge's reasoning." Ind. Child Supp. G. 1 Cmt. Furthermore, the "Guidelines are not immutable, black letter law," but provide "room for flexibility." Id.; See also Garrod v. Garrod, 655 N.E.2d 336, 338 (Ind. 1995).

In the present case, the trial court issued findings of fact and determined that an upward deviation from the Guidelines was justified and that Mother should be able to claim H.B. each year for federal and state tax exemptions. Before addressing whether the modification entered by the trial court was clear error, we must first discuss the impact of the parties' agreement that the modification hearing be conducted as a summary proceeding.

## I. Challenge to the Nature of Summary Proceedings

On direct appeal, Father contended that the evidence presented at the hearing was inadequate to support the findings entered by the trial court.[3] However, as we discuss in greater detail below, when a hearing is conducted in summary fashion, formal rules of evidence are not observed. As such, Father's argument is essentially a challenge to the form of the proceedings. In the current case, both parties were present at the modification hearing, were represented by counsel, and were sworn in by the court. The trial court asked Mother's counsel, "[a]re we doing this by summary fashion?" (Tr. at 4.) Counsel responded, "[o]h, yes," and Father's counsel also responded "[w]e are, your Honor." (Tr. at 4.) At other points throughout the hearing the trial court reiterated that the proceedings were being conducted in summary fashion. No objections were made to the summary nature of the proceedings. Father also did not object to the two informal exhibits offered by Mother.

Summary proceedings function to efficiently resolve disputes by allowing parties and the court to forego the use of formal rules of procedure and evidence and instead allow the court to base its findings and conclusions upon the arguments of counsel and limited evidence. Summary proceedings commonly take place when parties are not disputing essential facts, but rather the legal outcome compelled by those facts. This Court has recognized that

> [W]hile summary proceedings—when properly agreed to—can be beneficial in deciding matters of custody and parenting time to minimize the negative impact on the children, such summary proceedings may be less appropriate where the parties are *vigorously contesting every facet* of the process and appear

[3] Father's arguments included: 1) the trial court made findings that were "unsupported by the evidence" (Appellant's Br. at 9.); 2) findings and evidence were insufficient to support a deviation; 3) there was no evidence of Mother's expenses for H.B. or of the tax credit actually received; and 4) no evidence showed that Father had not earned the full parenting time credit.

> incapable of approaching these decisions in a civil or cooperative manner.

Wilson v. Myers, 997 N.E.2d 338, 342 (Ind. 2013) (emphasis added). Thus, where parties agree to most of the relevant facts, summary proceedings may be appropriate to provide the parties with an expedited resolution.

Here, the parties stipulated to many of the facts that are relevant to assessing child support, such as Mother's income, Father's income, and the number of overnights exercised by each parent. Both parties also agreed to proceed in summary fashion. Again, at no point did either party object to the summary nature of the proceedings. Although this Court has not specifically addressed a litigant's right to challenge the nature of summary proceedings, our Court of Appeals has addressed this issue. We are persuaded by the conclusions reached by the Indiana Court of Appeals, and the general principle that objections not contemporaneously raised are waived. See Jackson v. State, 735 N.E.2d 1146, 1152 (Ind. 2000) (explaining that "[t]he failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal," because an objection allows "the trial court the opportunity to make a final ruling on the matter in the context in which the evidence is introduced") (internal citations omitted).

In Trout v. Trout, a husband appealed from an order in a dissolution proceeding that was conducted as a summary proceeding. 638 N.E.2d 1306, 1307 (Ind. Ct. App. 1994). The trial court explained to the parties that it was conducting "a summary proceeding and that counsel would summarize their client's testimony and the clients would verify that the statements made by their respective attorneys were accurate." Id. The exhibits and most of the primary facts were agreed upon. Id. During the proceedings, neither party objected to the expedited procedure. Id. Husband later filed a motion to correct error challenging the summary proceeding, but the motion was denied. Id. On appeal, Husband argued in part that summary proceedings were inappropriate due to the absence of evidence on the record that the court could have relied upon. Id. The Court of Appeals determined that "any challenges to the procedure utilized by the trial court were waived by Husband's failure to object to the format of the proceedings." Id. (citing Archem, Inc. v. Simo, 549 N.E.2d 1054, 1060 (Ind. Ct. App. 1990)). Timely objections are required, and "[a]n appellant

cannot sit idly by without objecting, await the outcome of trial, and thereafter raise an issue for the first time on appeal." Trout, 638 N.E.2d at 1307 (quoting Cheek v. State, 567 N.E.2d 1192, 1195 (Ind. Ct. App. 1991)).

In Neese v. Kelley, the Court of Appeals addressed the appropriate use of summary proceedings in the context of a child support modification. 705 N.E.2d 1047 (Ind. Ct. App. 1999). At the start of the hearing, the trial court explained that the hearing would be conducted in summary fashion, the parties agreed that there were no facts in dispute, counsel summarized the issues and agreed facts, and exhibits were accepted, but the parties were not sworn nor was testimony heard. Id. at 1049. At the end of the hearing, Mother's counsel did object to "not being able to present evidence in the usual and traditional manner," but counsel conceded that there were no disputed facts that were not discussed. Id. Mother appealed part of the modification order, arguing that the trial court erred in holding summary proceedings. Id. at 1050. The Court of Appeals first noted that the failure to object to the form of the proceedings at the hearing waived the issue for appeal. Id. However, despite the waiver, the Court of Appeals explained, "Indiana adheres to the rule requiring a showing of prejudice before reversal may be granted." Id. (citing Christensen v. Sears, Roebuck and Co., 565 N.E.2d 1103, 1106 (Ind. Ct. App. 1991)). The Court of Appeals determined that Mother was not prejudiced by the summary proceedings. Id.

Other jurisdictions that utilize summary proceedings have reached the same conclusion. In Ritchey v. Brignac, the Louisiana Court of Appeals addressed a similar issue to the one before this Court today. 328 So.2d 190 (La. Ct. App. 1976). An individual appealed an award of child support and challenged the use of summary procedures. Id. at 191. The court explained that "the use of summary procedure [was] raised for the first time on [] appeal." Id. As such, the court relied upon Louisiana rules of procedure in determining that the individual had waived his objection to the summary nature of the proceedings. Id. (citing LSA-C.C.P. arts. 926, 928). Additionally, the individual "was represented by counsel at the hearing where testimony and evidence were received on all issues." Ritchey, 328 So.2d at 191. Thus, the court also determined that the individual's rights "were in no way prejudiced" by the summary proceedings. Id.

10

Accordingly, if Father did not want to proceed summarily and believed that a full evidentiary hearing was necessary, that objection should have been raised at the time of the hearing. Only at that point would it be appropriate for Father to assert that there was other evidence relevant to the modification determination. As the court concluded in Trout, Father "cannot sit idly by without objecting, await the outcome of trial, and thereafter raise an issue for the first time on appeal." Trout, 638 N.E.2d at 1307 (internal citation omitted). We hold that Father waived his right to appeal the nature of the summary proceeding. We also find that due to Father being represented by counsel and being given full opportunity to present his own arguments and evidence, in addition to an opportunity to rebut the arguments presented by Mother, Father was not prejudiced by the summary nature of the proceedings.

Given that Father cannot challenge the nature of the proceedings, we now address whether the trial court committed clear error in the context of summary proceedings. Our analysis leads us to conclude that the trial court did not commit clear error.

## II.    Modification of the Child Support Order within a Summary Proceeding

On direct appeal, Father raised two primary issues: 1) whether the trial court should have granted Father the full parenting time credit for 140-145 overnights, as provided under the Guidelines; and 2) whether the trial court erred in allowing Mother to claim H.B. each year for federal and state tax exemptions. The trial court ultimately determined that Father would receive only half of the parenting time credit provided under the Guidelines, which resulted in a support obligation of $105 per week. The trial court also concluded that Mother would claim H.B. every year for tax purposes, rather than Mother and Father alternating years.

When a trial court "finds the facts specially and states its conclusions thereon pursuant to Trial Rule 52, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard is given to the opportunity of the trial court to judge the credibility of the witnesses." McGinley-Ellis, 638 N.E.2d at 1252. We will assess whether "the evidence [] support[s] the specific findings made by the court which in turn must support the judgment." Id.

11

However, this analysis is conducted in light of the nature of summary proceedings, where trial courts are not compelled to follow formal rules of evidence or procedure.

Initially, an examination of some local rules provides a useful demonstration of the nature of summary proceedings, which are also referred to as "expedited hearings." Floyd County local rules provide that, "[a]n expedited hearing is a proceeding in open Court where the evidence is presented in summary narrative fashion by counsel or the parties, pro se, accompanied by the submission of documentary evidence when applicable." LR22-FRoo R. 308. During an expedited hearing, the trial court may question counsel or the parties, but "[f]ormal rules of evidence and procedure shall not apply." Id. Furthermore, the parties maintain the right to a full evidentiary hearing. "Any party, in open Court at the commencement of the expedited hearing, may demand an evidentiary hearing at which all rules of trial procedure and evidence will be observed." Id.

Clark County local rules are substantially similar. However, Clark County rules also set out how parties may elect to have an expedited hearing. The parties may agree in writing prior to the hearing, or "[a]t the time of a scheduled evidentiary hearing, the parties may orally agree, on record, to proceed in an expedited basis." LR10-FRoo R.11. Additionally, the court at any time can determine that the issue "would be better resolved at a full evidentiary hearing," and the court may schedule that hearing. Id.[4]

Other states also commonly use summary proceedings. Louisiana has defined summary proceedings as "those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings." LSA-C.C.P art. 2591 (2015). Not only are summary proceedings allowed, but over thirty years ago, the Supreme Court of Louisiana recognized, "[m]ore than one hundred and twenty-five code

---

[4] While the local rules in Floyd and Clark counties provide examples of the use of summary proceedings, it is not necessary for a county to adopt a local rule in order to conduct proceedings in summary fashion.

or statutory provisions permit the use of summary procedure in special cases." Clay v. Clay, 389 So.2d 31, 35 (La. 1979) (citing Comments (a) C.Civ.P. art. 2592) (internal quotation omitted). Usually, "summary proceedings are allowed in instances where the issue to be resolved is narrow and/or the need for rapid adjudication is great." Clay, 389 So.2d at 35.

In addition, the New Jersey Superior Court in R.K. v. D.L., Jr., discussed the use of summary proceedings in family law matters. 82 A.3d 305, 317 (N.J. Super. Ct. 2014). The court explained that "summary actions are expedited proceedings governed by" relevant provisions within the New Jersey rules of procedure. Id. at 317. Summary actions are intended "to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment while at the same time giving the defendant an opportunity to be heard at the time plaintiff makes his application on the question of whether or not summary disposition is appropriate." Id. (quoting Washington Commons, LLC v. City of Jersey City, 416 N.J.Super. 555, 564 (App. Div. 2010)). The court also acknowledged that a recent administrative directive required all non-dissolution cases within the family courts to be processed "as summary actions, with additional discovery at the discretion of the judge." R.K., 82 A.3d at 316. The "Non-Dissolution docket" in New Jersey serves in part to provide "relief to never married parents seeking custody, parenting time, paternity, child support and medical support." Id. Thus, New Jersey requires the use of summary proceedings in some cases.

We find the cases from both Louisiana and New Jersey helpful in demonstrating the legitimate use of summary proceedings in order to efficiently resolve disputes. Although differing in certain respects from Louisiana and New Jersey, trial courts throughout Indiana also utilize summary proceedings to accomplish the same efficiency goals. A variety of practices may be appropriate when conducting a summary proceeding, especially given the nature of the dispute. However, going forward, the collective opinion of this Court is that certain best practices would be prudent when a trial court is conducting summary proceedings. These procedures would include establishing on the record: 1) affirmative agreement from the attorneys that proceedings will be conducted summarily, for those represented by counsel; 2) affirmative agreement by both clients or unrepresented litigants to summary proceedings; 3) opportunity for both parties to add

any other relevant information regarding the issues in dispute before the summary proceeding is concluded or to affirm the arguments made by counsel; and 4) an advisement in advance of the hearing that either party is free to object to the form of the proceeding and request a full evidentiary hearing, upon which formal rules of evidence and procedure will be observed.

Despite the guidance we offer for the future, we conclude that under the circumstances in the current case, a summary proceeding was properly conducted. Both parties were represented by counsel and stated their agreement on the record that the hearing would be carried out in summary fashion. Accordingly, we assess whether the trial court clearly erred in entering the child support modification order in the context of a summary proceeding.

Father first contends that he should be entitled to the full parenting time credit under the Guidelines. The Guidelines currently provide that "[a] credit *should* be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." Ind. Child Supp. G. 6 (emphasis added). This credit is awarded out of recognition that "overnight visits with the noncustodial parent *may* alter some of the financial burden of the custodial and noncustodial parents in caring for the children." Vandenburgh v. Vandenburgh, 916 N.E.2d 723, 727 (Ind. Ct. App. 2009) (citing Young, 891 N.E.2d at 1048) (emphasis added). Although the prior language under the Guidelines stated that the trial court "*may* grant the noncustodial parent a credit," we continue to hold that the trial court is not required to award parenting time credit based upon overnights. Ind. Child Supp. G. 3(F)(4) (2010 Amend) (emphasis added); Ind. Child Supp. G. 6. Under both versions of the Guidelines, the commentary provides that

> An overnight will not always translate into a twenty-four hour block of time with all of the attendant costs and responsibilities. It should include, however, the costs of feeding and transporting the child, attending to school work and the like. Merely providing a child with a place to sleep in order to obtain a credit is prohibited.

Ind. Child Supp. G. 6 Cmt. Father contends that during each of the additional overnights with H.B. he is providing meals, transportation, and other accommodations for H.B.

14

However, the Guidelines and precedent have recognized that "calculating the amount of financial burden alleviated by an overnight visit is difficult." Vandenburgh, 916 N.E.2d at 727 (citing Young, 891 N.E.2d at 1048). Given the indefinite nature of when an overnight truly shifts the financial burden from one parent to the other, we cannot conclude that the parenting time credit is mandatory. Moreover, in the present case Mother and Father agreed on the number of overnights Father had H.B., but they did not agree that his contributions to H.B.'s care in exercising those overnights was equivalent to $92, the amount of credit Father argues he should be entitled to.

In this case, the trial court determined that applying the full parenting time credit would create a hardship on Mother's ability to provide care for H.B. The Court found that Mother is responsible for fixed and controlled expenses, such as clothing and education costs. The trial court also emphasized that extra time the noncustodial parent spends with the child should not be for the purpose of reducing that parent's support obligations. Rather, an increase in the noncustodial parent's parenting time should primarily be "for the benefit of everyone." (Tr. at 32.) The trial court ultimately concluded that it would be unjust for Mother to be left with 220-230 overnights a year, uninsured medical expenses, additional controlled expenses, and in essence have to contribute $213 per week towards H.B.'s care, while Father's ordered support obligation would only be $59 per week, especially considering Father's income is greater than Mother's.

These findings were sufficient to support the trial court's conclusion that awarding the entire parenting time credit was not appropriate.[5] Like the trial court, this Court does not believe

---

[5] We acknowledge that Father also contends multiple times that the full parenting time credit is warranted because he cares for H.B. an additional two to three days a week before and after school. However, this Court has explained, if the drafters of the Guidelines "had intended for non-overnight visits in which the noncustodial parent provides the children with transportation from school and to and from their activities, feeds them, and does homework with them to qualify for parenting time credit, the guidelines could have easily included those visits in the formula." Young, 891 N.E.2d at 1048. Thus, "[c]redit is not provided for evening visits because watching the children during study hours typically does little to displace the relative parental burdens." Id.

15

that exercising additional overnights should be used as a bargaining tool for parents to decrease their child support obligations. Rather, we encourage parents to exercise flexibility and to deviate from strictly scheduled parenting time when the parents are able to make those arrangements amicably and in the best interests of the child. We do not seek to encourage custodial parents to withhold additional parenting time from noncustodial parents for fear that trial courts will be required to reduce the noncustodial parent's ordered support obligation, without due consideration of all the circumstances. Flexible standards allow trial courts to "fashion child support orders that are tailored to the circumstances of the particular case." Johnson v. Johnson, 999 N.E.2d 56, 60 (Ind. 2013).

As for who should claim H.B. for tax exemption purposes, "[t]he federal tax code automatically grants to a custodial parent the dependency exemption for a child but permits an exception where the custodial parent executes a written waiver of the exemption for a particular tax year." Quinn v. Threlkel, 858 N.E.2d 665, 674 (Ind. Ct. App. 2006) (citing Harris v. Harris, 800 N.E.2d 930, 940 (Ind. Ct. App. 2003)). A trial court can order the custodial parent to sign over the dependency exemption. Quinn, 858 N.E.2d at 674.

In Quinn, Mother petitioned for a child support modification, requesting payment of college expenses and modification of Father's obligation. Id. Father never requested transfer of the tax exemption in his own petition, but the trial court ordered that Father would claim the child for tax purposes. Id. at 675. The Court of Appeals explained that "it is clear under Indiana Trial Rule 15(B) that the issues of a case are not necessarily determined by the pleadings, but can be altered by the evidence adduced at trial and the implied consent of the parties." Id. (citing Sutton v. Sutton, 773 N.E.2d 289, 295-96 (Ind. Ct. App. 2002)). The court in Quinn explained that during the modification hearing Father's counsel informed the trial court that Father was requesting the tax exemption, Father reiterated that request at the end of the hearing, and Mother did not object to the tax exemption being raised. Quinn, 858 N.E.2d at 675. Because Father raised the issue at the hearing and Mother did not object, the Court of Appeals held that the trial court did not err in considering who should receive the exemption. Id.

In the present case, Mother's counsel informed the trial court at the outset that Mother was seeking the tax exemption every year, rather than in alternate years. At that time, Father made no objection. To support Mother's request, Exhibit 2 was offered to demonstrate the additional benefits Father was receiving with the tax exemption. When Exhibit 2 was offered, Father's counsel explicitly said, "No objection."[6] (Tr. at 15.) Later in the hearing, Father's counsel was permitted to respond to this issue and made only a brief rebuttal argument, which the trial court seemingly found unpersuasive.[7] Father offered no exhibits of his own to rebut the exhibits offered by Mother. Finally, at the conclusion of the hearing, when asked if there was anything else either party wanted to add, no further arguments were offered by Father's counsel regarding the tax exemption.

As in Quinn, it was appropriate for the trial court to consider the issue of who would receive the tax exemption. Mother raised the issue at the beginning of the proceedings and Father was given full opportunity to present his own argument regarding the tax exemption. Father never made an objection to the issue being raised or to the exhibit offered by Mother. When the trial court entered its findings, the court considered Mother's and Father's incomes, their other support obligations, and reiterated that it was attempting to enter an Order that "is reasonable for this child and this family." (Tr. at 31.) Given that it was a summary proceeding, the trial court properly

---

[6] Father makes extensive arguments in his brief regarding the unsubstantiated nature of Mother's exhibits. First, we emphasize that Father made no objections to either exhibit when it was offered or at any point later in the hearing. Second, even if an objection had been made, during a summary proceeding the trial court can properly consider documents that do not comport with the formal rules of evidence. Thus, Father's actual objection would go to the nature of the proceedings.

[7] In response to Mother's claim that Father's tax exemption amounts to approximately $3,800 on years he claims H.B., Father's counsel argues, "[r]egarding the tax exemption, your Honor, that's probably an issue of both-the year-if the $3,500.00 is accurate that's probably the year that [Father] would get to claim both children . . . but that goes both ways. Mother gets that exact same exemption every other year." (Tr. at 19-20; Exhibit 2.)

relied upon the arguments of counsel and the offered exhibits.[8] The trial court did not clearly err when it entered findings based upon the offered evidence and ultimately ordered Mother to claim H.B. each year for the dependency tax exemption.

To summarize, for both of the ordered modifications, the trial court accepted informal exhibits and heard arguments on disputed issues. The trial court then acted accordingly by entering written findings based upon the information provided by the parties and explaining the basis for its deviation from the Guidelines. Once again, formal findings of fact and conclusions of law are not required by the Child Support Guidelines. The judge need only articulate his or her reasoning. This is exactly what the trial court did in this case. Thus, the modifications were not clear error.

## Conclusion

Father waived his challenge to the form of the summary proceeding when he failed to make a contemporaneous objection to that procedure. Despite Father's waiver, the trial court properly conducted a summary proceeding under the agreement of both parties, and the court was permitted to rely upon the arguments of counsel and limited informal documentary evidence when it entered its findings. The trial court did not commit clear error when it deviated from the Indiana Child Support Guidelines by not granting Father the full parenting time credit and permitted Mother to claim H.B. each year for the federal and state dependency tax exemption. We affirm the trial court's child support modification order.

Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.

---

[8] Father relies upon Harris for his contention that the trial court failed to consider all of the relevant factors before awarding the tax exemption to Mother. 800 N.E.2d at 940-41. First, Harris is not controlling over this Court. Second, Harris involved an appeal from a full evidentiary hearing, not a summary proceeding. Id. at 933.