## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 08 2018, 5:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William O. Harrington
Harrington Law, PC
Danville, Indiana

ATTORNEYS FOR APPELLEE

Robert N. Reimondo
Capper Tulley & Reimondo
Crawfordsville, Indiana

Ryan W. Tanselle
Capper Tulley & Reimondo
Brownsburg, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Sarah M. Hinton,
*Appellant*,

v.

Andrew J. Emmons,
*Appellee*.

February 8, 2018

Court of Appeals Case No.
32A01-1708-JP-1889

Appeal from the Hendricks Superior Court

The Honorable Karen M. Love, Judge

Trial Court Cause No.
32D03-1602-JP-14

**Brown, Judge.**

[1] Sarah M. Hinton ("Mother") appeals the trial court's order establishing paternity, custody, and child support, which awarded sole legal and physical custody to Andrew J. Emmons ("Father"). Mother raises two issues which we revise and restate as whether the trial court violated Mother's due process rights in conducting its final hearing in the paternity case. We affirm.

## Facts and Procedural History

[2] On September 9, 2011, Z.L.H. was born to Mother and Father. On February 8, 2016, Father filed a verified petition to establish paternity, custody, support, and parenting time, and later amended it on February 18, 2016, to include a request that the name of the minor child be changed. On March 16, 2016, Mother and Father filed an agreed motion to consolidate and to vacate hearing, which stated that Mother filed "for Protective Orders under Cause No. 32D02-1601-PO-31 and Cause No. 32D02-1601-PO-32" in addition to Father's petition, and that "these matters both concern the same parties and minor child and can be best addressed at the same time in the pending paternity action under Cause No. 32D03-1602-JP-000014, currently set for May 12, 2016." Appellant's Appendix Volume 2 at 30. The trial court denied the agreed motion on March 31, 2016, and continued the hearing set for May 12, 2016.

[3] On April 27, 2016, the parties and their respective counsel participated in mediation and were unable to reach an agreement; however, a mediated partial agreed entry from the same day state that the parties stipulated that "Suzanne Conger should be appointed by separate Order as Guardian Ad Litem to represent the best interests of the parties' minor child," and that "parties' minor

daughter should begin counseling at the Indiana Center for Children and Families immediately, provided said counselor(s) are covered under [Father's] insurance, and [Father and Mother] should participate in [Z.L.H.'s] counseling as directed by her counselor." *Id.* at 33. The trial court entered an order on May 4, 2016, directing Z.L.H. to begin counseling immediately and appointed Conger as the Guardian ad Litem ("GAL Conger") on May 6, 2016.

[4] On May 12, 2016, the trial court conducted the scheduled preliminary hearing on Father's petition to establish paternity and entered provisional orders on June 6, 2016. In the provisional orders, the court stated "Father shall have parenting time supervised by a professional parenting supervisor," both Mother and Father "shall fully cooperate with the parenting time supervisor," GAL Conger is "to make a recommendation for a Parenting Time schedule on or before 7-6-16," and Father is to pay Mother temporary child support for the benefit of Z.L.H. *Id.* at 40. On June 20, 2016, counsel for Mother filed a motion to withdraw appearance.[1]

[5] On July 21, 2016, Father filed a motion for status hearing, which stated that he was "unaware of counseling (if any) being conducted by [Mother] for the minor child" and was "unaware of the nature of contact . . . (if any) between said

---

[1] The chronological case summary (the "CCS") contains a June 29, 2016 entry stating that "Counsel must certify client[']s last know[n] address." Appellant's Appendix Volume 2 at 5. On July 29, 2016, counsel for Mother filed an Amended Motion to Withdraw Appearance, which certified to the court the last known address of Mother, and the court entered its order granting the amended motion to withdraw appearance on August 1, 2016.

counselor and that Guardian ad Litem," that GAL Conger had not submitted a recommendation regarding parenting time, and that Father "has not seen his 4 year old daughter since January 17, 2016, a period of over six (6) months." *Id.* at 49-50. On July 25, 2016, the court scheduled a hearing for August 19, 2016. *Id.* at 51.

[6] On August 17, 2016, GAL Conger filed a status report, which stated that she had begun corresponding with therapist Charlotte Cox of the Indiana Center for Children and Families on June 13, 2016. The report also stated that GAL Conger "feels that [Z.L.H.] should be going to therapy every week, NOT just alternate weeks so that Ms. Cox will be able to advise GAL that [Z.L.H.] is emotionally ready to see Father," and that "[o]nce Ms. Cox has determined that [Z.L.H.] is ready, GAL believes visits should begin immediately," and that the "GAL is concerned that the longer this drags out that [Z.L.H.] has no contact with Father, that the longer it will take to transition him into regular unsupervised visits." *Id.* at 60.

[7] On August 19, 2016, the court held the status hearing, where Mother appeared *pro se* and the court stated:

> We do have the Guardian ad Litem report which was filed on the 17[th] which is just two days ago. I don't know if you've had a chance to read it. Are you ready to proceed then? Ma'am, I should I don't know, you're here without counsel. You do have a right to a continuance – you have a right to ten days notice of the Guardian ad Litem report before I can proceed so if you wanted a continuance today I would have to give it to you. And so that – I'm going to ask you that question. Do you want to

proceed today or having the Guardian ad Litem report are you prepared to go ahead and go ahead?

Transcript Volume 2 at 85. Mother stated, "I'm really not ready. I really wasn't aware where any of this was going. I honestly know – I mean just I had no idea – ," and the court later stated, "I think you've explained that you're not ready to proceed." *Id.* at 85-86. On August 25, 2016, the trial court issued an order on the status hearing, which rescheduled the hearing for September 12, 2016, and ordered that Mother shall "henceforth engage [Z.L.H.] in counseling on a weekly basis and that [Z.L.H.'s] counselor shall appear at the hearing set herein." Appellant's Appendix Volume 2 at 62.

[8]     On August 31, 2016, Father entered a verified motion for modification of provisional order, asking the court to permit parenting time with Z.L.H. On September 1, 2016, the court ordered GAL Conger to supervise a one-hour visit between Z.L.H. and Father and to file recommendations concerning Father's verified motion, which it scheduled for hearing also on September 12, 2016. On September 2, 2016, Mother's newly-attained counsel filed an appearance and a motion to continue the provisional hearing. On September 8, 2016, GAL Conger filed a motion to allow therapist Cox to appear telephonically at the September 12, 2016 hearing. On September 9, 2016, the court denied Mother's motion to continue the provisional hearing and granted GAL Conger's motion.

[9]     On September 12, 2016, the trial court held its scheduled hearing on Father's verified motion, with both Father and Mother present and at which the court admitted by stipulation the recommendation of therapist Cox dated September

9, 2016,[2] and counsel reached an agreement on Father's parenting time.  The following exchange occurred at the hearing between GAL Conger, counsel for the parties, and the court:

> The Court:  You have them already?  But it talks about holidays in there and let's just talk about that before everybody leaves.  Let's see –
>
> The Bailiff:  The hearing will be January 27 at 9:00, two hours, first choice.
>
> [Mother's Counsel]:  Just so I know, is it the final or is that just to –
>
> [Father's Counsel]:  Final.

Transcript Volume 2 at 124.  The court entered its order on Agreed Modification on September 13, 2016, which set forth a schedule for Father's supervised parenting time and stated that following the completion of supervised parenting time and absent a report from GAL Conger otherwise, Father would begin unsupervised parenting time pursuant to the Indiana Parenting Time Guidelines on Friday, October 7, 2016 and continuing thereafter until further order.  The order also stated that "this matter is

---

[2] The recommendation stated that Z.L.H. had been attending individual play therapy since May 2016, on a bi-weekly or weekly basis, and that throughout the sessions Z.L.H. "had not disclosed any accounts of abuse or fears of either parent," "has indicated that she would like to see" Father, and "is ready to have contact" with him.  Exhibits Volume 4 at 33.  The recommendation also stated that Z.L.H. was to begin "weekly visits with [Father], supervised by an agreed upon mediator," that supervised visits should occur "for at least four weeks before considering being changed to unsupervised," and that Z.L.H. should continue "individual weekly therapy at Indiana Center for Children and Families, with Charlotte Cox," who would assess "how visits are going from [Z.L.H.'s] perspective and determine if [she] is ready to transition to unsupervised visits." *Id.*

schedule[d] for final hearing on January 27, 2017 at 9:00am for two (2) hours." Appellant's Appendix Volume 2 at 78.

[10] On October 18, 2016, Mother's counsel filed a motion to withdraw, which the court granted. On October 19, 2016, Father filed a verified motion for modification of provisional order, asking the court to modify its provisional order of child support and, on November 2, 2016, the court scheduled a hearing on the motion for January 27, 2017.

[11] On January 20, 2017, a CCS entry, titled "Administrative Event," states that "[d]ue to the congestion of the Court's calendar, the Court on its own motion resets this matter for hearing on Verified Motion for Modification of Provisional Order on February 6, 2017 at 2:00pm with 2 hour allotted as 1st choice."[3] *Id.* at 9. On February 3, 2017, GAL Conger filed a motion for continuance of the hearing scheduled for February 6, 2017, which stated in part that she requested "a slight modification to facilitate exchanges and to see how the minor child does with increase of 6 more overnights per month." *Id.* at 97. The court granted GAL Conger's motion the same day with an order stating that "the hearing in this cause set for February 6, 2017 2:00 p.m. is now reset on the 13[th] day of April, 2017, at 8:30 [a.m.] 2 hours 1st choice." *Id.* at 99.

---

[3] Also on January 20, 2017, a second CCS entry titled, "Service Issued," states "NTFD: [Father's Counsel], [the GAL], RESP," and on Janurary 22, 2017, another CCS entry titled, "Automatic Paper Notice Issued to Parties," states "Administrative Event ---- 1/20/2017: [Mother]." Appellant's Appendix Volume 2 at 9.

[12] At the April 13, 2017 hearing, Father appeared with counsel, Mother appeared *pro se*, and GAL Conger, Father, and Mother testified. At the beginning of the hearing, the court asked "I think that this is a continuation of a hearing. We actually started our hearing – would it be September of '16," to which Father's counsel stated, "Yeah, we – Your Honor, we had it – I think we had an agreed modification at that time, sort of a temporary agreed modification that went into effect in September and now we're set for the – sort of the final hearing." Transcript Volume 2 at 129. GAL Conger answered affirmatively when asked by Father's counsel if she knew that Father was requesting custody of the child, she testified that she thought that consistency for Z.L.H. is important and, when asked by Father's counsel, "[a]s we approached the hearing here within the last month or so did it come to your attention that Mother now has moved," she answered:

> Yes, I met with Mother before her move and her lease was running out at her . . . address in Brownsburg and she told me that she was going to move closer to where she works and I think – I think it was the first of April maybe she moves or maybe it was the first of March.

*Id.* at 143. She also testified that "if Mother gets the primary custody during the school year she would – I assume enroll her in the school that she – school district which would be a different district than Father." *Id.* at 143-144. She answered affirmatively when Father's counsel asked her if she had concerns about Mother's relationships, about her not being flexible and not being stable with regard to daycare and school district, about her criminal convictions,

about her changing doctors, and about her overall stability. When asked by Father's counsel if "in summary of your testimony you literally have no concerns about my client, is that correct," GAL Conger answered, "[a]t this point, no." *Id.* at 152. After Mother cross-examined GAL Conger about Mother's recent move, her stability, an exchange of Z.L.H. involving Father, Mother, and third parties, and communication between Mother and Father, counsel for Father asked GAL Conger on redirect examination if she thought Father was capable of co-parenting, to which she answered affirmatively, and then if she thought Mother was capable of co-parenting, to which she answered, "Fom the flexib- no." *Id.* at 172. The court later asked GAL Conger if she thought that Mother and Father could share legal custody, and she testified:

> Your Honor, because of the protection order and that being in place I'm not sure legal custody could be joint only because it requires communication. Mother, you know, wants the communication only through emails so I think that having joint legal custody may be difficult. I would think that both parents though input into all the things that normally go into legal custody that both need to share and talk about it, but I'm not sure if that talking or communicating through email would be enough. You know, that's the biggest impediment to a joint legal custody.

*Id.* at 176.

[13]  On August 4, 2017, the trial court entered an order establishing paternity, custody, and child support, finding it in Z.L.H.'s best interests that Father have sole legal and physical custody.

### *Discussion*

[14] The issue is whether the trial court violated Mother's due process rights in conducting the final hearing. Mother argues that the court violated her due process rights when it failed to provide notice that the April 13, 2017 hearing would be a final hearing and when it conducted a final hearing when GAL Conger had not filed a final report ten days prior to the hearing, as required by Ind. Code § 31-17-2-12(a)(5), (c).[4] Specifically, Mother contends that she reasonably believed that the January 27, 2017 hearing related only to Father's October 19, 2016 verified motion for modification of provisional order; that at the time of the January 20, 2017 CCS entry, Mother had "no notice of a final hearing date" and only had "notice of a hearing being scheduled as a Hearing to Modify Provisional Order"; and that the suggestion at the beginning of the April 13, 2017 hearing by Father's counsel that it was "sort of the final hearing" would have been the first notice Mother received about it being a final hearing. Appellant's Corrected Brief at 22-23. She also contends that Indiana law required a final report of GAL Conger to be mailed to her at least ten days

---

[4] Mother also claims in her Statement of Case that the trial court committed reversible error "by denying Mother due process by conducting a final hearing when a critical witness, [therapist Cox], failed to appear for the final hearing as ordered by the trial court" and "in the Paternity Decree, awarding Father sole physical and legal custody of [Z.L.H.]." Appellant's Corrected Brief at 7. Nevertheless, she but fails to develop these arguments elsewhere in her brief. Thus, we do not address these arguments. *See Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997) ("A brief should not only present the issues to be decided on appeal, it should be of material assistance to the court in deciding those issues.") (citing *Hebel v. Conrail, Inc.*, 475 N.E.2d 652, 659 (Ind. 1985)).

before the final hearing and that conducting a final hearing without a final report was a denial of due process.

[15] Father argues that Mother failed to object to the court conducting a final hearing on April 13, 2017, and to the court considering GAL Conger's testimony at this hearing without a corresponding report, and that therefore she has waived any argument on appeal that her due process rights were violated. Father also contends that, waiver notwithstanding, Mother did have notice that the April 13, 2017 hearing was a final hearing, GAL Conger testified as to her recommendations and was cross-examined and recross-examined by Mother, and Mother failed to object to the trial court hearing testimony by GAL Conger without an accompanying report.

[16] Our review of the record reveals that Mother was present at the September 12, 2016 hearing, at which the final hearing was originally scheduled, and that the September 13, 2016 order on Agreed Modification also indicated that the "final hearing" was scheduled for two hours and to be held on January 27, 2017. Appellant's Appendix Volume 2 at 78. When the court rescheduled the January 27, 2017 hearing to February 6, 2017, it maintained the same time allotment and issued an automatic paper notice to the parties. Similarly, when it granted GAL Conger's motion for a continuance, rescheduling the February 6, 2017 hearing to April 13, 2017, the court kept the hearing for two hours and distributed the order to Mother's address. We also observe that Mother did not object at any time before or during the April 13, 2017 hearing, which began

with the statement by Father's counsel that "we're set for the – sort of the final hearing," to the court. Transcript Volume 2 at 129.

[17] The record also reveals that the trial court continued its August 19, 2016 hearing because Mother was ready to proceed, that GAL Conger's status report had been filed only two days prior on August 17, 2016, that the court explained to Mother at the hearing that she had a right to a continuance and a right to ten days notice of GAL Conger's report before it was able to proceed and that, had she wanted a continuance, the court would have to give it to her. We also observe that, at the April 13, 2017 hearing, GAL Conger did not submit a final report but rather testified, and that during her testimony Mother neither asked for a continuance nor objected to her as a witness, but instead cross-examined and recross-examined her.

[18] The Indiana Supreme Court has held that "timely objections are required, and 'an appellant cannot sit idly by without objecting, await the outcome of trial, and thereafter raise an issue for the first time on appeal.'" *Bogner v. Bogner*, 29 N.E.3d 733, 740 (Ind. 2015) (quoting *Trout v. Trout*, 638 N.E.2d 1306, 1307 (Ind. Ct. App. 1994) (quoting *Cheek v. State*, 567 N.E.2d 1192, 1195 (Ind. Ct. App. 1991)), *trans. denied*). When, as here, untimely objections not brought during trial are raised for the first time on appeal, the issues are waived. *See Fobar v. Vonderahe*, 171 N.E.2d 57, 58 n.1 (Ind. 2002) (summarily affirming this Court's finding that the wife's failure to object amounted to waiver of an issue regarding the trial court's error in failing to abide by its local rule requiring filing of asset disclosure statements); *In re V.C.*, 867 N.E.2d 167, 177 (Ind. Ct.

App. 2007) (holding that the mother's lack of objection or request of continuance to a consolidation of CHINS and paternity action waived appellate review of the issue) (citing *Patel v. State*, 533 N.E.2d 580, 585 (Ind. 1989)).

## *Conclusion*

[19] For the foregoing reasons, we affirm the trial court's order establishing paternity, custody, and child support in Father.

[20] Affirmed.

Baker, J., and Riley, J., concur.